In re Jonathan KUTNER

Samuel M. Rosenthal

Charles S. Christopher.

Bankruptcy Nos. 379–00579–F, 379–00591–F and 379–00593–F.

United States Bankruptcy Court, N. D. Texas, Dallas Division.

March 3, 1980.

Philip I. Palmer, Jr., Dallas, Tex., for debtor.

Daniel C. Stewart, Bloomington, Ind., Chapter 13 Trustee.

### OPINION

JOHN C. FORD, Bankruptcy Judge.

These three Chapter 13 cases [1] are all filed under the new Code. Since all present the common issue, does the Trustee have standing under Section 1307(c) [2] to file an application for conversion, they have been heard and considered jointly.

The schedules in each case reflect total debts in excess of the maximum limits set for a Chapter 13 Debtor by Section 109(e) [3]. Inasmuch as the Northern District of Texas is designated as a pilot district under Section 1501, it fell to the United States Trustee to provide a Trustee in each case. Section 151302(a). He elected to appoint a standing trustee under that option provided in 28 U.S.C. § 586(b). After a preview of each, the Trustee understandably concluded that Chapter 13 relief was not appropriate,

---

1. Case No. 379–00593, Charles S. Christopher, Debtor, was dismissed on November 1, 1979. Case No. 379–00579, Jonathan Kutner, Debtor, was converted to a Chapter 11 on December 13, 1979.

2. All statutory references are to Title 11, United States Code, unless otherwise indicated.

3. To illustrate, the Kutner proceeding listed unsecured claims totalling $3,724,624.98.

and filed a motion to convert each case to a Chapter 7 proceeding. The Debtors, each of whom are represented by common counsel, filed virtually identical motions to strike the applications to convert upon the grounds that the Trustee was not such a party in interest as could file a motion under Section 1307(c).

Subject to the motion to strike, each Debtor further contended that the great bulk of his scheduled debts were contingent in nature, and thus not to be counted in calculating the debt limits. It is true that Section 109(e) in setting the maximum debt limits does refer to "non-contingent liquidated" debts. The Debtors concede that it is also true that each has judgments against him in excess of the $100,000 unsecured limit. They seek to avoid the impact of this concession by asserting that the debts must be classified as contingent or not at the time of their inception. If contingent when first made, the argument runs, then they will always continue to be so classified regardless of subsequent events.

I do not find that argument persuasive. Section 109(e) reads "only an individual with regular income that owes, *on the date of the filing of the petition,* noncontingent, liquidated . . ." (emph. added). The clear language of the statute, then, would seem to mandate that the classification be made as conditions exist on the date of the filing. While the Debtors bring forth many points of policy and considerations of judicial economy, matters of that type simply cannot be allowed to prevail over clear and unambiguous statutory language.

As a result, then, it becomes of critical importance to determine if the Trustee does have the standing to raise the issue in the first place. Clearly any creditor would be a party in interest, but as of the date of the hearing none have done so. If conversion is to be here accomplished, it must be done on the Trustee's petition alone.

There are three conversion sections in the Code, Sections 706(b), 1112(b) and 1307(c). Each uses the identical phrase . . . "on request of a party in interest . . ." The same words are used frequently throughout the Code, but are nowhere defined. When the amendments to H.R. 8200 were offered to the House of Representatives and the Senate, identical statements were made by the Hon. Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights and by the Hon. Dennis De Concini, Chairman of the Subcommittee on Improvements in Judicial Machinery as follows:

"Section 102 specifies various rules of construction but is not exclusive. Other rules of construction that are not set out in Title 11 are nevertheless intended to be followed in construing the Bankruptcy Code. For example, the phrase 'on request of a party in interest' or a similar phrase, is used in connection with an action that the Court may take in various sections of the Code. The phrase is intended to restrict the court from acting sua sponte. Rules of Bankruptcy Procedure or Court Decisions will determine who is a party in interest for the particular purposes of the provision in question, but the Court will not be permitted to act on its own." Sept. 28, 1978, 124 Cong. Rec.H. 11089, 11102; Oct. 6, 1978, 124 Cong.Rec.S. 17406, 17419.

From these remarks alone it might be assumed that Congress' only intent was to prevent unilateral action by a Court, but otherwise had no intent one way or the other as to who would be included.

Another meaning, and the one which I believe actually applies, is that the phrase does not have a single meaning which can be equally applied throughout the Code. There is no reason why a party in interest under a Chapter 7 liquidation could not include, or exclude, some different entities from a party in interest in Chapter 9, 11 or 13. Indeed, as this opinion will demonstrate, it is my conclusion that a Trustee is a party in interest under Section 706 but not under 1302.

As a point of beginning, it should be recalled that the words "party in interest" were extensively used in the old Bankruptcy Act of 1898. See, e. g. Sections 14, 32

and 57. Consequently, it has long since been judicially determined just what those words meant under the Bankruptcy Act. Under familiar rules of statutory construction, and in the absence of some clear indication to the contrary, Congress will be deemed to have been aware of the meaning supplied by the Courts and to have intended the same words to have the same meaning. It might not be amiss to note that this presumption here is not an artificial one. The new Bankruptcy Code was eight years in its preparation, as a joint effort from bankruptcy scholars, practitioners and the judiciary.

■ The primary meaning ascribed is "one whose pecuniary interest is directly affected by the bankruptcy proceeding". *In Re Woodmar Realty Co.*, 241 F.2d 768 (7th Cir. 1957); *In Re Transatlantic and Pacific Corp.*, 216 F.Supp. 546 (S.D.N.Y. 1963); *In Re Statewide Theatres Corp.*, 4 F.Supp. 86 (D.Del.1933); *In Re Devonian Mineral Spring Co.*, 272 F. 527 (N.D.Ohio 1920). This same common sense concept is sometimes expressed as "those who have an interest in the res to be administered and distributed". *Rosenbaum v. Dutton*, 203 F. 838 (8th Cir. 1913); *In Re Sully*, 152 F. 619 (2d Cir. 1907).

The Trustee in Bankruptcy was also classed as a party in interest, but upon the basis of powers he derived from those creditors whose rights he represented.

As originally conceived under the old Bankruptcy Act, the creditors were to elect one of their own number to serve as the Trustee in Bankruptcy. He, in turn, served as the representative of all of the creditors, in his statutory duties of the liquidation and distribution of the state, the investigation of the debtor's affairs and the prosecution of such causes of action as might exist. Since creditors are the main parties in interest, it would reasonably follow that their representative should also be a party in interest.

That brings us, then, to the question of whether a Trustee under Chapter 13 is also the representative of creditors so these cases would still have some precedent value. The Trustee here argues that his function is essentially the same as it would have been in a pre-Code bankruptcy liquidation, but this does not appear to be an accurate characterization. Rather, Congress seems to have intended the Chapter 13 Trustee to be more of a hybrid ombudsman. His duties are expressly set out in Section 1302(b) [4].

Subsection (2) expressly gives the Chapter 13 Trustee the right to "appear and be heard" at any hearing concerning either property values subject to a lien, confirmation or modification of a Plan after confirmation.[5]

■ Two items of significance can be noted from this subsection. First, and obviously, the right to appear and be heard at a conversion hearing is omitted. If we take the omission as being of significance, under the doctrine of *expressio unius est exclusio alterius*, then that omission is determinative of the issue. While this particular canon of construction is sometimes said to be among the weaker canons, it is of more import here where the Congressional listing purports to be both inclusive and exhaustive. 2A *Sutherland, Statutory Construction* § 47.23.

Second, and perhaps even more telling, is the right bestowed upon the Chapter 13 Trustee to appear and be heard at the confirmation hearing. Section 1302(b)(2)(B). The significance is that this right has already been bestowed by Congress upon "a party in interest" in Section 1324. If, therefore, Congress regarded a Chapter 13 Trustee already to be a party in interest, then he already had that right and the duplicate grant in Section 1302(b)(2)(B) is only a pointless redundancy.

Finally, under Section 1302(b)(3) the Trustee is given the affirmative duty to advise and counsel with the Debtor on non-legal matters. This concept is completely

---

4. Section 15302(b) in a pilot district, but identical in wording to Section 1302(b).

5. Language authorizing the Trustee to "raise or initiate" such issues are not found in Chapter 13.

new,[6] and would certainly be inconsistent with an idea that the Trustee is to play the same role as the creditor-oriented, pre-Code Trustee in Bankruptcy, as the Trustee here urges. We can assume Congress realized helpful advice and counsel should at least be objective. If the Chapter 13 Trustee is only to carry on as the creditors' representative, then the net effect of 1302(c) is to have the Debtor seek advice from his creditors, which could lead to some uneven consequences.

As further support for that position, he also contends that he is the creditors' representative; particularly in the pursuit of litigation. This statement would seem to be inaccurate, and thus not supporting the Trustee's position. The Congressional expression of intent is to the effect that the Debtor also has the power to sue and be sued:

"Section 1303 of the House Amendment specifies rights and powers that the debtor has exclusive of the Trustee's. The Section does not imply that the Debtor does not also possess other powers concurrently with the Trustee. For example, although Section 1323 is not specified in Section 1303, certainly it is intended that the Debtor has the power to sue and be sued." Sept. 28, 1978, 124 *Cong.Rec.* 11089, 11103.

On the other hand, the position that the Chapter 13 Trustee does have standing to seek conversion is supported by a statement in the text in 5 *Collier, Bankruptcy,* § 1307.-01[4] (15th Ed.).

"On the request of the Debtor, a creditor, or the Chapter 13 Trustee, the Court may. . . ."

I do not find that statement persuasive since there is no discussion whatever to indicate how the conclusion was reached, and the sole authority cited in support is Section 1307(c) itself. It appears likely that the author of this usually reliable text was thinking only in terms of the construction given to that phrase under the old Act, but without any consideration as to the applicability of those decisions to the new Chapter 13. The other major bankruptcy work takes a neutral position, without attempting to enumerate just who is or is not to be included, ". . . on request of a party in interest . . . ." 5 *Bkr.L.Ed.* § 45.51.

The Trustee finally argues that since the United States Trustee would be a party in interest, and since he is the appointee of the United States Trustee, then he must have some species of derivative standing. I do not find that position persuasive for, if sound, it would result in Chapter 13 Trustees being parties in interest in pilot districts but not in non-pilot districts.

It is by no means clear that the United States Trustee is a party in interest.

"It should be noted that a United States Trustee is apparently not a 'party in interest' ". 5 *Collier, Bankruptcy* § 1109.-02[3] (15th Ed.).

This conclusion stems from the use elsewhere in the Code of the phrase "on request of a party in interest or the United States Trustee." See Sections 151104, 151105.

Two other major considerations support the conclusion that the Chapter 13 Trustee is not a party in interest. These are found in Section 1109(b). This section, which is applicable only to Chapter 11 Reorganization proceedings, provides that the Trustee and others named ". . . may raise and may appear and be heard on any issue in a case under this Chapter."

It seems to be of considerable significance that Section 1109(b) is found only in Chapter 11 with no equivalent section in Chapter 13. If we accept the Trustee's contention that he is already a party in interest, then we must also explain away the express inclusion of "Trustee" in Section 1109b as another pointless redundancy by Congress. Bearing in mind the lengthy and careful consideration which went into the new Bankruptcy Code, we are compelled to the conclusion that these are not pointless redundancies but deliberate exclusions expressing Congressional intent.

---

**6.** Under the former Chapter 13 wage earner's arrangement, the Trustee was not appointed until after the Plan had been confirmed. Section 633(4), Bankruptcy Act.

Additionally, it must be noted that the power bestowed upon the Chapter 11 Trustee in Section 1109(b) differs in still another major respect from the powers granted to the Chapter 13 Trustee in Section 1302(b)(2). The Chapter 11 Trustee "may raise" any issue while the Chapter 13 Trustee may only appear and be heard on designated issues. The inescapable conclusion is that the Chapter 13 Trustee may not initiate anything. He may appear and be heard only upon selected things.

This fundamental difference between a Chapter 11 and Chapter 13 Trustee is also supported by the conceptual differences between the two chapters. The Chapter 11 Reorganization proceeding contemplates a negotiated settlement, by way of Plan approval,[7] between unsecured creditors, secured creditors, shareholders and any other competing groups. The present Chapter 11 is a merger of former Chapters 10, 11 and 12 of the Bankruptcy Act. Now, in this single chapter, there can be modification, and even elimination of both creditor claims, even secured, and ownership interests. It can be realistically anticipated that there will be extensive negotiations between the differing entities.

The Chapter 11 Trustee is appointed only as the exception, and not as the general rule. Section 1104. If appointed, then, he plays a key role from that point forward, even including the right to propose his own Plan of Reorganization. Section 1121(c).

There is need in Chapter 11 for some entity, with standing, to keep the proceeding progressing if progress is feasible, or otherwise to halt the proceedings and convert to liquidation, and to bring his weight to bear upon any obstruction from any source toward that objective. Under the Bankruptcy Act, that duty often fell to the Court. Now it is to be hoped the Chapter 11 Trustee will step into the gap.

Chapter 13, however, proceeds upon a completely different basis. Since it is available only to individuals, there are no shareholder interests to be considered. Unsecured creditors do not vote, and consequently no creditors' committees are contemplated. If affected, secured creditor approval is required, although it appears much more probable that Debtors will employ one of the so-called "cram down" provisions found in Section 1325(a)(5). In short, then, no need really exists in Chapter 13 for the "roving gun" idea of the Chapter 11 Trustee and nothing can be discovered to indicate a Congressional intent to import that concept from the one Chapter to the other.

Finally, as a matter of policy, conversion from Chapter 13 to either 11 or 7 is a step of considerable consequence to creditors. Each Debtor, here, as his final alternative plea, asked to be allowed to convert to Chapter 11, rather than the Chapter 7 liquidation sought by the Trustee. At least one of these cases would appear from the schedules to be a no-asset estate. The Trustee was asked why he would not favor conversion to Chapter 11 rather than liquidation so as to provide the debtors a chance to see if they could negotiate a compromise payment plan acceptable to their creditors. It was the Trustee's opinion, in response, that each case was so hopeless that there was no point in "prolonging the agony". That may well be so, but this Court would have preferred to have heard from, and frankly would be far more influenced by, those who actually have a pecuniary interest directly affected by the proceeding. Negotiation has always been the life blood of bankruptcy matters, and that doubtless will be just as true under the new Code as under the old Act. It cannot be said, therefore, that Congress erred in restricting a matter of such significance as a conversion motion to those who have some direct financial interest in the estate being administered. It is, after all, the Debtor's agony which will be prolonged and not that of the Trustee's. Unless the real creditors have no interest in negotiations, then the Debtor's desire to negotiate a Plan for payment should be encouraged.

In sum, then, it is concluded that a Trustee in a Chapter 7 liquidation may move for

---

7. And there may be more than one Plan filed.

conversion under Section 706(b) since he is there acting as the representative of the creditors and the old authorities still apply. A Chapter 11 Trustee may move for conversion under Section 1112(b) but only because of the express grant of authority so to do found in Section 1109b. A Chapter 13 Trustee, however, is without standing to file a motion under Section 1307(c). The Debtor's Motions to Strike, accordingly, are sustained.