### In re SANDHURST SECURITIES, INC., Debtor.

### Bankruptcy No. 88 B 11009 (HCB).

United States Bankruptcy Court,
S.D. New York.

Feb. 15, 1989.

---

Richard G. Cushing and Daniel R. Wotman, New York City, for debtor.

Rosenman & Colin, New York City by Paul L. Bindler and Stephen L. Ratner, Flushing, N.Y., for Prudential–Bache Securities, Inc.

Richard O'Connell, Flushing, N.Y., interim trustee.

## DECISION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The instant motion to resolve an election of trustee controversy raises the threshold issue of whether a candidate for election to the position of trustee has standing to bring such a motion.

### I

The Debtor, Sandhurst Securities, Inc., commenced this case on May 10, 1988 by filing with this Court its voluntary petition for relief under Chapter 11 of title 11, United States Code, 11 U.S.C. § 1101 *et seq.* (1986) (the "Bankruptcy Code" or the "Code"). The case was converted to one under Chapter 7 of the Bankruptcy Code

---

**1.** Local Bankruptcy Rule 46 requires that a Chapter 7 debtor, among others, be given notice of proposed orders. S.D.N.Y. Local Bankruptcy Rules.

**2.** Section 702(a) of the Bankruptcy Code provides:

(a) A creditor may vote for a candidate for trustee only if such creditor—

on July 12, 1988. Upon conversion of the case, the United States Trustee for this circuit appointed Bruce D. Scherling as interim trustee. Subsequently, Scherling resigned, apparently because the Court agreed with the objections by the Debtor to Scherling's retention of his law firm as counsel.[1] The United States Trustee thereupon appointed Richard D. O'Connell as successor interim trustee. O'Connell, a member of the United States Trustee's panel of private trustees established pursuant to 28 U.S.C. § 586(a)(1), currently serves in that capacity.

Pursuant to § 341(a) of the Bankruptcy Code and Rule X–1006 of the Rules of Bankruptcy Procedure (1987), the United States Trustee convened a meeting of creditors in the Debtor's Chapter 7 case on December 16, 1988 (the "Section 341 Meeting"). At the Section 341 Meeting, four creditors requested an election of a permanent trustee pursuant to § 702 of the Bankruptcy Code and to this end, provided copies of their respective proofs of claim to the United States Trustee. Report of Election Controversy dated December 23, 1988, filed by United States Trustee ("U.S. Trustee's Report") ¶'s 4–5. Manufacturers Hanover Trust Company ("Manufacturers"), having a claim of $57,131.29, Spicer & Oppenheim having a claim of $41,732.88, and Herzfeld & Rubin, having a claim of $58,559.29, nominated and voted for Daniel A. Zimmerman to serve as permanent trustee in this case. Prudential–Bache Securities, Inc., having a claim of $596,824.02, nominated and voted for O'Connell. *Id.* ¶ 8.

Prudential–Bache's claim was objected to as being disputed, and, therefore, it was asserted that Prudential–Bache was not eligible to vote pursuant to 11 U.S.C. § 702(a)(1). *Id.,* ¶ 7.[2] The basis of the

---

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of [11 U.S.C.];

(2) does not have an interest materially adverse, ... to the interest of creditors entitled to such distribution; and

(3) is not an insider.

dispute is grounded in an adversary proceeding commenced by the Debtor against Prudential–Bache on May 22, 1988. The Debtor, a former securities firm for whom Prudential–Bache acted as clearing broker, claims that Prudential–Bache destroyed its business during and after the stock market crash of 1987 by, *inter alia,* breaching its contract with the Debtor, violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.,* breaching a fiduciary duty allegedly owed by Prudential–Bache to the Debtor and intentionally interfering with the Debtor's relations with its clients. *See* Complaint in Adversary Proceeding No. 88–5423A, *Sandhurst Securities Ltd. v. Prudential–Bache Securities, Inc.* Apparently because these allegations are in part based on the same transaction and events giving rise to Prudential–Bach's claim, the claim is said to be disputed.

The U.S. Trustee's Report notes that, according to the Debtor's schedules, as adjusted in light of the proofs of claim filed at the Section 341 Meeting, total unsecured claims against the Debtor amount to $300,-646.02, exclusive of Prudential–Bache's claim of $596,824.04. If that claim is included, unsecured claims total $897,470.06. U.S. Trustee's Report ¶ 6.

Thus, allowance of Prudential–Bache's claim for purposes of calculating the total allowable claims entitled to distribution in accordance with § 702(a)(1) of the Bankruptcy Code would result in the aggregate amount of such claims being so large that the amount of the claims of the three creditors that voted for Zimmerman would not meet the 20% threshold required by § 702(c)(1) of the Bankruptcy Code. 11 U.S.C. § 702(b). U.S. Trustee's Report

¶ 8.[3] O'Connell would thus become permanent trustee. 11 U.S.C. § 702(d).[4]

Similarly, if Prudential–Bache's vote were counted, the 20% threshold would have been met, but Prudential–Bache's vote would then constitute the majority in amount required by § 702(c)(2) and O'Connell would be elected. Conversely, if Prudential–Bache's claim were not allowed for voting purposes, the 20% requirement would have been met and Zimmerman would have been elected permanent trustee.[5]

Zimmerman timely filed the instant motion on December 27, 1988. He seeks to resolve the election dispute by disallowing Prudential–Bache's claim for voting purposes and thereby causing him to be elected. The motion recites that Manufacturers supports the motion and will submit supporting papers. Manufacturers, however, did not submit any papers until January 9, 1989 when it filed a one paragraph statement of support for the Zimmerman motion. Statement of Manufacturers Hanover Trust Company in Support of Motion to Appoint Daniel Zimmerman Permanent Trustee (the "Manufacturers' Statement"). Prudential–Bache filed opposing papers questioning Zimmerman's standing, denying that it is materially adverse to the estate and disputing the Herzfeld and Rubin and Spicer and Oppenheim claims.[6]

The motion initially came on to be heard on January 18, 1989. The Court noted that the standing issue potentially presented a controlling issue of law. The parties ultimately agreed to adjourn the hearing to enable Zimmerman to respond to the Prudential–Bache papers. At the adjourned hearing, held on February 7, 1989, it was agreed that the standing issue is potential-

---

11 U.S.C. § 702(a).

3. Section 702(b) of the Bankruptcy Code provides for an election of trustee only if requested by holders of at least 20% in amount of the claims specified by § 702(a)(1) that are held by creditors eligible to vote under § 702(a).

4. Section 702(d) provides that if a trustee is not elected, the interim trustee shall serve as trustee.

5. Section 702(c) provides that a candidate for trustee is elected trustee if holders of at least 20 percent in amount of eligible claims held by creditors that may vote do vote and such candidate receives the votes of creditors holding a majority in amount of such claims that are held by creditors that vote for a trustee.

6. A motion to resolve an election controversy is a contested matter under Rule 9014 of the Rules of Bankruptcy Procedure.

ly dispositive and the evidentiary hearing regarding the factual issues should be adjourned pending its resolution.

In support of his motion, Zimmerman makes two principal assertions relating to standing. First, he argues that he has standing. Second, he asserts that, if he lacks standing, the Manufacturer's Statement, although untimely on its own, should relate back to the filing of Zimmerman's motion, thereby curing any lack of standing since it is undisputed that Manufacturers has standing. We address the latter of these contentions first.

## II

Rule X–1006(c) of the Rules of Bankruptcy Procedure, like Rule 2003(d)[7] seeks to provide for speedy resolution of election disputes, *see In re Carla Leather, Inc.*, 50 B.R. 764, 770, n. 11 (Bankr.S.D.N.Y.1985), by requiring that

> [i]f no motion for the resolution of the election dispute is made to the court within ten days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

Bankruptcy Rule X–1006(c). The ten day period is "firm and subject to no exceptions." *Carla Leather*, 50 B.R. at 771.

■ It is thus clear that the Manufacturers Statement, filed some twenty-four days after the meeting of creditors, was untimely even after excluding Saturdays, Sundays and legal holidays as required by Bankruptcy Rule 9006(a) for computing time periods of less than eleven days. To permit that period to be extended under the guise of a relation back doctrine would be to create an exception to a firm deadline—a deadline to which the District Court found exceptions could not be granted even in a case of highly compelling equities. *See*

*Carla Leather*, 50 B.R. at 771.[8] If Manufacturers, clearly a creditor and thus having undisputed standing to mount an election dispute case, truly desired to proceed, it should have done so within the time permitted. In light of the firmness of the deadline, its untimely statement cannot be deemed to relate back in order to afford standing to a candidate. We thus turn to the central issue of Zimmerman's standing to bring the motion.

## III

A candidate for election to a bankruptcy trusteeship has no interest to be affected by the underlying bankruptcy case. He is not a debtor, creditor or shareholder. For that reason, the court in *In re Grossman*, 225 F. 1020 (S.D.N.Y.1915), the only case directly on point that has been cited to us or which we have been able to find, held that a candidate lacks standing to seek review of the election process. There, the bankruptcy referee, who under the former Bankruptcy Act, *see* 11 U.S.C. § 91(b) (repealed), had conducted the first meeting of creditors, had rejected the votes for a candidate for trustee cast by a commissioner of deeds acting under a power of attorney acknowledged before himself. On the candidate's petition to the District Court for review, the Court held:

> I do not think that any right of [the candidate] was violated by the referee's ruling. It is true that he was defeated for the office of trustee; but he had no interest in that office, nor any right to be trustee.

> The only persons who could appeal by petition for review were those whose votes had been cast out. I think the commissioner of deeds could have appealed, but that would only have been by

---

7. Although Zimmerman's motion is brought under Rule 2003(d), Rule X–1006(c) remains applicable in those districts such as this one where a United States Trustee has been appointed. Undoubtedly, given the almost nationwide expansion of the United States Trustee program pursuant to Pub.L. 99–554, 100 Stat. 3088 (October 27, 1988), these rules will be merged. As of now, they are almost identical in language and are to be construed together. *In re Carla Leath-*

*er*, 44 B.R. 457, 465 (Bankr.S.D.N.Y.1984), *aff'd* 50 B.R. 764, 770 (S.D.N.Y.1985).

8. This issue differs from the issue of whether a creditor could, outside the ten day period of Rule X–1006(c), join in a timely filed motion by another creditor. In such a case, the court's jurisdiction would be properly invoked within the ten day period and no exception would need be created.

reason of his representation of creditors who were the real parties in interest. 225 F. at 1021.

Although the age of this case leads Zimmerman to cast doubt on its continued validity, we are not so quick to assume that precepts long established are so suspect when no subsequent authority directly on point contradicts the rule or intervening legal analysis does not point to a different result. *See In re United States Lines, Inc.*, 79 B.R. 542, 548 (Bankr.S.D.N.Y. 1987). Thus, the Supreme Court has adopted the methodology that Congress, in adopting the Bankruptcy Code, has not done away with prior authoritative holdings absent a clear indication of intent to do so. As the Court reasoned:

> The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.

*Midlantic National Bank v. New Jersey Dept. of Environment Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859, *reh'g denied*, 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986); *see also Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986); (Congress is not to be deemed to have "silently-abrogate[d]" prior authoritative judicial rulings in enacting the Code.)

In this respect, there is not the slightest indication that Congress intended such a change. Neither Rule X–1006(c) nor its counterpart, Rule 2003(d), see note 7 *supra*, lists the entities entitled to make the requisite motion. *See In re Blesi*, 43 B.R. 45, 48 (Bankr.D.Minn.1984). The Advisory Committee Note to Rule 2003 states, "when an interested party presents the dispute to the court, its prompt resolution by the court will determine the dispute...." Rule 2003 Advisory Committee Note (1983) (emphasis added). From this glimmer of evidence, it is argued that a candidate who is obviously concerned that he or she be elected, may make the motion. To this it is added that the District Court in *Carla Leather*, stated that "[t]his language indicates that anyone with an interest in an election, even one without voting rights, may challenge the results of that election." *Carla Leather*, 50 B.R. at 770 n. 11.

The statement by the Advisory Committee can hardly be viewed as an expression of congressional intention to reverse a prior undisputed holding that a candidate for the office of trustee "had no interest in that office." *Grossman*, 225 F. at 1021. Instead, it appears that the phrase "interested parties" refers to parties to the bankruptcy proceeding and is a shorthand reference to entities bearing characteristics similar to "parties in interest" as that phrase is employed in § 1109(b) of the Bankruptcy Code. Admittedly, that section does not apply to Chapter 7 cases. But, the familiar canon of construction that Congress is presumed to intend the same meaning to similar words or phrases in integrated legislation, *e.g. Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539, *reh'g denied*, 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975); Frankfurter, *Some Relections on the Reading of Statutes*, 47 Col.L.Rev. 527, 536–37 (1947), indicates that only a debtor, *Blesi* 43 B.R. at 48, creditor, equity security holder or other party, like an indenture trustee, representing entities having an economic interest at stake in the bankruptcy case, *see Roslyn Savings Bank v. Comcoach Corp., (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir.1983); *In re McLean Indus., Inc.*, 96 B.R. 440, 444–445 (Bankr.S.D.N.Y.1989) are within its ken. As stated in *In re Kutner*, 3 B.R. 422 (Bankr.N.D.Tex.1980), standing in this sense requires a "pecuniary interest directly affected by the proceeding," or, a "direct financial interest in the estate being administered." *Id.* at 427.

Such an interpretation is, moreover, consistent with the *dictum* in *Carla Leather* quoted above. There, the standing of an insider, who was also a contingent creditor, to make the motion was challenged. The Court did not decide the issue. Its footnoted view that an insider creditor, although barred from voting pursuant to § 702(a)(3),

was a party having an interest at stake in the bankruptcy case and could dispute an election hardly extends that right to a mere candidate having no such interest.

Also without merit is the assertion that *Grossman* is distinguishable. In Zimmerman's view, *Grossman* arose on appeal from a bankruptcy referee's exclusion of votes; therefore, he asserts that even though he may lack standing to appeal, he has standing to bring his motion here.

*Grossman,* however, did not arise on appeal. As the case plainly states, it was a petition for review of the conduct of an election. Under the former Bankruptcy Act, referees in bankruptcy, and later bankruptcy judges conducted first meetings of creditors at which, in liquidation cases, trustees were elected. *See* former Bankruptcy Rule 207. With the enactment of the Bankruptcy Code in 1978, Congress sought to separate administrative and judicial duties, and leave bankruptcy judges with only judicial duties, *In re Gusam Restaurant Corp.,* 737 F.2d 274, 276 (2d Cir. 1984); H.R.Rep. No. 595, 95th Cong., 2d Sess. 100–01, 331 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. To this end, the Bankruptcy Rules provide that such creditors' meetings were to be conducted by the court clerk or, in pilot districts, a United States Trustee. *See* Rules 2003(b), 1006(b).[9] Thus, Rules 2003(d) and X-1006(c) shifted the authority to hear petitions and motions seeking judicial review of the conduct of elections to the bankruptcy courts, since they no longer conducted elections. Accordingly, the instant matter before this Court is in the same position as the petition before the District Court in *Grossman.*

Zimmerman consequently asserts, relying on *In re Metro Shippers, Inc.,* 63 B.R. 593 (Bankr.E.D.Pa.1986), that, notwithstanding the absence of any significant evidence of an intention by Congress to clothe a candidate for election with standing to bring an election dispute proceeding, the law has come to recognize that such a candidate has standing derived from his economic interest in possible commissions. In *Metro Shippers,* the court held that an interim trustee has standing to bring an election dispute proceeding solely on the reasoning that by virtue of the election he

> lost the opportunity to administer this bankruptcy and with it the possibility to earn commissions. Due process would seem to require that he has standing to challenge any defects in the process by which these rights were lost.

63 B.R. at 598; *contra, Matter of G.I.C. Government Securities, Inc.,* 56 B.R. 105, 108 (Bankr.M.D.Fla.1985).

We disagree with this reasoning. If a candidate for election has no right to the office, *Grossman,* 225 F. at 1021, he has no rights at stake in the election. As merely a candidate, he is not privileged to attend. At most, he enjoys the possibility that enough creditors may vote for him. If so, he might be elected. If elected, he might earn a commission if there are sufficient free assets. It can hardly be said that such a chain of speculation leads to the conclusion that a candidate has a right to commissions.

Nor can it be said that the election procedures are designed to protect a candidate. They are designed to protect creditors and the welfare of the estate. *In re Poage,* 92 B.R. 659, 662 (Bankr.N.D.Tex.1988); *In re Kam Kuo Seafood Corp.,* 42 B.R. 558, 560 (Bankr.S.D.N.Y.1984).

If a dispute arises, it is the creditors and other parties having interests at stake in the bankruptcy proceeding whose interests may be affected. A candidate is not to be

---

**9.** The role of United States Trustees was expanded in 1986 with the nationwide expansion of the pilot program. Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, codified as amended 28 U.S.C. § 581 (1986); H.R.Rep. No. 5316, 99th Cong., 2d Sess. XXII–9 (1986).

By barring bankruptcy judges from conducting or attending such meetings, see 11 U.S.C. § 341(c), Congress sought to leave bankruptcy judges to exercise judicial functions "untainted by knowledge of administrative matters necessary and perhaps prejudicial to an impartial judicial determination." H.Rep. No. 99–764, 99th Cong., 2d Sess. 18 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5227, 5230.

clothed with those rights belonging to others in order to advance his own chances of election. *Cf. In re McLean Indus. Inc.*, 96 B.R. at 445–47. (An entity that is neither a creditor nor a shareholder lacks standing under 11 U.S.C. § 363(b)(1) to object to a debtor's payment of cash in exercising a stock option since it is not a "party in interest" in the bankruptcy proceeding.)

Moreover, there are significant policy reasons for limiting standing to entities having a stake in bankruptcy case and interim trustees who represent the estate itself. Interim trustees represent the estate. *Carla Leather*, 44 B.R. at 472. Particularly in small estates, they are best able to ascertain initially whether a creditor having a material interest adverse to the estate, 11 U.S.C. § 702(a)(2), or an insider, 11 U.S.C. § 702(a)(3), seeks to vote. *Cf. Poage* at 662. (Interim trustee is the "optimal party to object to a creditor's claim for voting purposes since he is the representative of the estate ... and the purposes behind the § 702 voting restrictions is to protect the bankruptcy estate." (citations omitted)). The danger of an interim trustee advancing his own interests and becoming permanent trustee in the absence of an election remains but can be easily addressed by the courts.

But, election disputes effectively halt administration during their pendency. If an interested party is affected, he can determine in a disinterested fashion whether the cost of delay is outweighed by the potential benefit to the estate to be achieved by success in the election dispute. To entertain election disputes brought by candidates solely or principally motivated by the possibility of commissions affords little, if any, such benefit, poses the considerable risk of delay and inefficient estate administration that Rules 2003(d) and X–1006(c) are designed to limit, and foreshadows the dubious prospect of numerous election disputes by persons seeking commissions.

We thus conclude that Zimmerman lacks standing to bring the instant motion seeking to resolve an election dispute. As a mere candidate, he is not a party to the bankruptcy nor is he "interested" in the conduct of the bankruptcy case. His motion may not be entertained and must be dismissed. Prudential–Bache is to settle an order in conformity with this decision.