In re Kenneth D. OXBORROW d/b/a Wheatland Investment Company, Wheatland Supply, Inc., a Washington corporation Debtors.

Doug BERG, Stan Welch, et ux., et al., Appellants,

v.

Joseph A. ESPOSITO and John G. Layman, Co–Trustees of the Estate of Kenneth D. Oxborrow Appellees.

Nos. C–88–310–RJM, 88–499–RJM and 88–501–RJM.

United States District Court, E.D. Washington.

Jan. 6, 1989.

John R. Lewis, Yakima, Wash., for appellants.

John W. Campbell, Esposito, Tomari & George, Spokane, Wash., for appellees.

## MEMORANDUM and ORDER

ROBERT J. McNICHOLS, Chief Judge.

On December 16, 1988 at 10:00 a.m., the Court heard appellants' appeal from the bankruptcy court's Order Resolving Election Dispute. Appellants argued that the bankruptcy court erred in finding that no permanent trustee was elected at the creditors' meeting, and that consequently the interim trustees continued as the permanent trustees. For reasons that follow, the Court affirms the bankruptcy court's order.

FACTS

On September 28, 1984, debtor Kenneth D. Oxborrow filed for bankruptcy reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174, leaving some 800 creditors to fight over what remained in his bankrupt estate. The bankruptcy court appointed Messrs. Joseph Esposito and John Layman to serve as trustees. In administering the estate, the trustees brought suits to recover from many investors payments that the investors received from the debtor and that the trustees alleged were fraudulent or preferential. Of course, these investors did not wish to return the payments.

Arguing that the recovery lawsuits would not recover sufficient funds to offset attorneys' fees collected by the "self-serving" trustees, these investors and other creditors sought to have confirmed a reorganization plan that would essentially abandon the recovery lawsuits. However,

on January 7, 1988, after concluding that the proposed plan was nonconfirmable, bankruptcy Judge John Klobucher converted the case to a Chapter 7 liquidation.

Pursuant to 11 U.S.C. § 701, the bankruptcy court appointed the present trustees, Messrs. Esposito and Layman, as interim trustees. Prior to the first creditors' meeting, the trustees filed objections to the claims of creditors who were subject to fraud and preference lawsuits. Also prior to the meeting, creditor Harry Smithwick delivered to other creditors letters, admittedly drafted and paid with the help of attorney John Lewis, soliciting proxies to vote for a permanent trustee. Through these solicitation letters, Smithwick was able to obtain over 210 proxies.

On February 4, 1988, the first creditors' meeting was held pursuant to 11 U.S.C. § 341(a). At this meeting, Smithwick requested a trustee election and voted to nominate accountant Mr. Ronald Springer. Since the bankruptcy clerk had never before conducted a contested § 702 election, there was apparent confusion. Before conducting the election, the clerk allowed a question-and-answer session in which Smithwick, attorney D. Gordon Willhite, the interim trustees, and certain creditors participated. Then, without first determining who was eligible to vote or what percentage had requested the election, the clerk allowed all creditors present to vote for a permanent trustee. Based upon all the votes obtained, the clerk announced that Springer had been elected permanent trustee. The interim trustees disputed the election results, and the meeting was adjourned.

In deciding whether to certify the election results, the bankruptcy court considered arguments dealing with what creditors were eligible to vote and what amount of their claims the creditors could vote. After attorney Lewis and the trustees were unable to agree as to the tabulation of ballots and claims, the court had the court clerk tabulate the votes.

On March 3, 1988, the bankruptcy court issued its Order Resolving Election Dispute. Based upon the clerk's tabulations, the court determined that creditors holding 26% of the eligible claims actually voted during the election, but that creditors holding only 14% of the eligible claims requested the election. Thus, the court concluded that although the 20% quorum requirement of § 702(c)(1) was met, the election was invalid since the 20% requesting requirement of § 702(b) was not satisfied and that the interim trustees became the permanent trustees pursuant to § 702(d). In reaching this conclusion, the court ruled as follows:

(1) that the interim trustees had standing as permanent trustee candidates and as administrative claimants to dispute the election.

(2) that creditors, including the claim of a child whose investment account was established by the parent/creditor, alleged to have received preferential or fraudulent conveyances were ineligible to vote unless the transfer was disgorged since they had materially adverse interests under § 702(a)(2); and that other creditors—e.g., a shareholder and his 100%-controlled corporation—would be entitled to vote as not having adverse interests.

(3) that Smithwick and attorney Lewis did not violate the rules governing proxy solicitation.

(4) that creditors were entitled to vote the full amount of their claims—i.e., initial investment plus expected investment return—instead of merely the investment.

(5) that secured creditors were eligible to vote the unsecured portion of their claim, if the creditor indicated its claim was undersecured.

(6) that since only Smithwick and his proxies were identified as requesting the election before the fact, the court would consider Smithwick, his proxies, and those voting for a replacement trustee as requesting the election. Creditors voting for the interim trustees were not considered to request an election since the interim trustees would have become the permanent trustees in the absence of a request.

In their initial brief, appellants asserted a myriad of assignments of errors. In their reply brief and during oral argument, however, appellants raised only one issue on appeal: whether the bankruptcy court erred in finding that an insufficient percentage of eligible claims were requested for a trustee election? Appellees appeal the bankruptcy court's finding that attorney Lewis did not violate the proxy solicitation rules, although appellants argue that this issue is not appealable since they have not raised it.

Before reaching these issues on appeal, the Court must first determine several preliminary matters.

## PRELIMINARY ISSUES

### A. *Jurisdiction*

■ Appellees argue that this Court lacks subject-matter jurisdiction because the bankruptcy court's order is not appealable.

The jurisdictional prerequisites for an appeal of a bankruptcy court decision to a District Court are set forth in 28 U.S.C. § 158(a), which provides in pertinent part:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges under section 157 of this title.

The general standards for appealability of bankruptcy orders are broader and more flexible than those that apply to ordinary civil cases because "certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." *In re Benny,* 791 F.2d 712, 718 (9th Cir.1986) (citation omit-

ted). An order that may determine and seriously affect substantive rights and cause irreparable harm to the losing party if it had to wait to the end of the bankruptcy case is immediately appealable so long as the order finally determines the discrete issue to which it is addressed. *In re 405 N. Bedford Dr. Corp.,* 778 F.2d 1374, 1377 (9th Cir.1985) (citations omitted).

In the present case, appellants appeal the bankruptcy judge's order that voided the creditors' election of a permanent trustee, and that appointed the interim trustees as the permanent trustees. No cases have been found that hold specifically that such an order is appealable.[1] However, the Court concludes that the order resolving the election dispute is appealable as a final order since the bankruptcy court order here has finally, distinctly, and conclusively determined a discrete issue. *See In re A & J Elastic Mills, Inc.,* 34 B.R. 977 (S.D.N.Y. 1983) (District court reviewed bankruptcy court order certifying a trustee election).

### B. *Standing*[2]

■ The trustees have asserted that a number of appellants, as preference and fraud transferees, have no standing to challenge the trustee election.

Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have standing to appeal that order. *In re Fondiller,* 707 F.2d 441, 443 (9th Cir.1983). A litigant qualifies as such an aggrieved person if the bankruptcy order appealed from diminishes the litigant's property, increases his burdens, or impairs his rights. *Id.* Whether a litigant is an aggrieved person with standing to appeal a bankruptcy order is a question of fact for the district court. *In re El San Juan Hotel,* 809 F.2d 151, 154 n. 3 (1st Cir.1987).

---

1. Appellees cite to cases holding that a bankruptcy order appointing a trustee is not a final order that is appealable. These cases are inapposite since the appeals here concern an order voiding the creditors' election of a permanent trustee, and not merely the appointment of a trustee.

2. The bankruptcy court held that the interim trustees "have standing as permanent trustee candidates ... [and] as administrative claimants." Appellants initially contested the interim trustees' standing to challenge the creditors' election of a permanent trustee, but now properly concede the issue. *See In re Metro Shippers, Inc.,* 63 B.R. 593, 598 (Bankr.E.D.Pa.1986); *In re Blesi,* 43 B.R. 45, 48 (Bankr.D.Minn.1984).

Appellants Berg and Smithwick have allowable, undisputed, fixed, liquidated, unsecured claims eligible to vote. Since the bankruptcy court's order impairs their right to vote, the Court rules that they have standing to appeal.

### C. *Standard of Review*

■ A district court applies two different standards of review to an appeal from the bankruptcy court: (1) Findings of fact are not disturbed unless clearly erroneous, a stringent burden that requires the reviewing court to have a definite and firm conviction that a mistake has been made; (2) Conclusions of law are reviewed de novo. *Steinberg v. McGinnis (In re United Home Loans, Inc.)*, 71 B.R. 885, 888 (W.D.Wash.1987).

■ The appellate record should contain all documents and evidence bearing on the proceedings below and considered by the bankruptcy court in its decision; items not before the lower court and not considered by it in rendering its decision may not be included in the record. *In re Neshaminy Office Bldg. Associates*, 62 B.R. 798, 802 (E.D.Pa.1986). However, the district court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom. *Id.*[3]

Having addressed the preliminary issues, the Court now considers appellants' allegation that the bankruptcy court erred in holding that an insufficient percentage of claims eligible to vote were requested for an election.

### DISCUSSION

■ The. provisions of section 702 of the Bankruptcy Code provide the requirements to elect a permanent trustee in a Chapter 7 bankruptcy proceeding.[4] To elect a trustee, creditors holding at least 20% in amount of the type of claims referred to in § 702(a) must first request that an election be held; then, creditors holding at least 20% in amount of such claims must actually vote; and finally, the trustee candidate must receive a majority in amount of the votes actually cast. The 20% requesting requirement of § 702(b) is independent of the 20% quorum requirement of § 702(c)(1). *See In re Baton Rouge Marine Repair & Drydock, Inc.*, 57 B.R. 19, 22–3 (Bankr.M.D.La. 1985); *In re Blanchard Management Corp.*, 10 B.R. 186, 188 (Bankr.S.D.N.Y. 1981).

■ In the present case, the only eligible creditor requesting an election before voting was Mr. Smithwick, who held a number of proxies. Because of apparent confusion and unfamiliarity with the proper procedures, the bankruptcy clerk failed to determine before the vote what other creditors

---

3. Appellees have moved to strike from the record various exhibits they categorize in their briefs as Exhibits A and B. Appellees argue that Exhibit A contains documents not considered by the bankruptcy court, and that Exhibit B contains documents considered by the bankruptcy court but that are self-serving. Since the Court has not considered these exhibits in reaching its decision, the motion to strike need not be decided.

4. § 702. Election of trustee.
   (a) A creditor may vote for a candidate for trustee only if such creditor—
   (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution ...;
   (2) does not have an interest materially adverse ... to the interest of creditors entitled to [participate in any distribution from the bankruptcy estate]; and
   (3) is not an insider.
   (b) At the meeting of creditors under section 341 of this title, creditors may elect one person to serve as trustee in the case if election

of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.
   (c) A candidate for trustee is elected trustee if—
   (1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and
   (2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.
   (d) If a trustee is not elected under subsection (c) of this section, then the interim trustee shall serve as trustee in the case.

wished to request an election. Instead, the clerk proceeded to allow all creditors present to vote for a permanent trustee. Only after the interim trustees disputed the election was an attempt made to determine the percentage requesting the election. In this after-the-fact determination, the bankruptcy court counted the following creditors as requesting an election: (1) Mr. Smithwick; (2) the creditors who delivered their proxies to Mr. Smithwick; and, (3) those creditors who voted against the interim trustees, because such creditors had "impliedly requested" an election. Creditors voting for the interim trustees were not considered as requesting an election, because the interim trustees would have become permanent trustees if no election were held.

Based upon the tabulations made by the bankruptcy clerk, the bankruptcy court determined that creditors holding 26% of the eligible claims actually voted during the election, but that creditors holding only 14% of the eligible claims requested the election. Thus, the court concluded that the 20% requesting requirement was not satisfied, and that consequently the interim trustees became the permanent trustees.

The Court here first finds that the factual tabulations of the percentages requesting and actually voting are not clearly erroneous and thus will not be disturbed. The Court also concludes that the bankruptcy court, under the circumstances, properly determined who actually requested an election. Strictly construing § 702(b), the bankruptcy court could have only counted Smithwick and his proxies as requesting an election. However, the court also included, as impliedly requesting, those creditors voting against the interim trustees.[5] Although creditors voting for the interim trustees were not considered as requesting an election, this after-the-fact conclusion is sensible under the circumstances since the interim trustees would have become the permanent trustees absent an election. Indeed, appellants benefited from the bankruptcy court's determination because more

creditors actually voted against the interim trustees than voted for them.

Appellants argue that since 26% of the eligible claims were actually voted, the requesting requirement should also be considered to have been satisfied. By adopting the 20% requesting requirement, Congress intended the following:

> The minimum percentage request requirement is designed to insure that a trustee is elected only in cases in which there is true creditor interest, and to discourage election of a trustee by attorneys for creditors.... If a significant percentage of creditors does not wish to elect a trustee, it is unfair to impose the will of a few creditors' attorneys on the rest of the creditor body. It will be more difficult under this procedure for a trustee to be elected unless there is actual creditor interest in the case.... By adopting the 20 percent requirement, the bill discourages attorney control, but retains the idea of true creditor control....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 102–03 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6063–64 (footnotes omitted). The legislative history of § 702(b) clearly indicates that Congress expressly adopted the 20% requesting requirement in order to limit election of trustees to cases in which there is genuine creditor interest. Appellants' argument assumes Congress passed meaningless legislation in enacting the separate requesting requirement of § 702(b), and the Court declines to assume this. *See Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *In re Tom Carter Enterprises*, 49 B.R. 243, 245 (Bankr.C.D.Cal. 1985).

In affirming the bankruptcy court's decision, the Court notes that appellants and their attorney John Lewis were aware of the requirements of § 702 well before the election took place. Nevertheless, appellants failed to ensure that a sufficient percentage of eligible claims were noted as

---

**5.** The Court need not and does not decide at this time whether, under different circumstances, creditors voting against an interim trustee may

be considered as impliedly requesting an election.

requesting an election. In *In re Blanchard Management Corp.*, 10 B.R. 186 (Bankr.S.D.N.Y.1981), the bankruptcy court refused to certify an election for a permanent trustee where the petitioning creditors had available but failed to utilize the correct procedures to elect a new trustee. *See also* 4 L. King, *Collier on Bankruptcy* p 702.02 at 702–11–12 (15th Ed. 1979) ("Creditors should be especially aware ... for if they fail to take the proper steps to request election of and elect a trustee as provided in section 702, they will have no alternative but to accept the interim trustee as permanent trustee in the case.") Since appellants were aware of yet failed to follow the correct procedures in requesting an election, they have exhausted their opportunity to elect a permanent trustee and cannot now complain of the results.

CONCLUSION

■ The bankruptcy court's order was fair and sensible under the circumstances. The parties in this case have spent enough time and money litigating this issue. Congress intended to discourage election of a trustee by attorneys for creditors. Unfortunately, it appears that attorneys have moved in to control this case. Accordingly, the Court AFFIRMS the bankruptcy court's order appointing the interim trustees as permanent trustees because an insufficient percentage of claims were requested for an election.[6]

IT IS SO ORDERED.

DONE BY THE COURT.

---

**6.** Having so decided, the Court need not address appellees' appeal of the proxy solicitation issue. The Court notes, however, that a proxy solicitation by a creditor who is merely a strawman for an attorney, is in substance a solicitation by an attorney proscribed by Bankruptcy Rule 2006(d)(4).