**In re AMERICAN EAGLE MFG., INC., Debtor.**

**James R. Caudill; and American Eagle Mfg., Inc., Appellants,**

**v.**

**N.C. Machinery, Inc.; Alaskan Copper & Brass Co.; Peter H. Arkison; Aga Khan; Kent W. Mordy, Chapter 7 Trustee, Appellees.**

**BAP Nos. WW–97–1574–RRyRu, WW–97–1698–RRyRu. Bankruptcy No. 96–06145.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 24, 1998.

Decided Mar. 3, 1999.

Ronald W. Goss, Shulkin, Hutton, Inc., Seattle, WA, for James R. Caudill.

Arnold M. Willig, Hacker & Willig, Seattle, WA, for American Eagle Mfg., Inc.

David G. Kontos and Gayle Bush, Kent, WA, for N.C. Machinery, Alaska Copper & Brass.

Don Morrison, Lasher, Holzapfel, Sperry & Ebberson, Seattle, WA, for Kent W. Mordy, trustee.

Before RUSSELL, RYAN, and D. RUSSELL,[1] Bankruptcy Judges.

## OPINION

RUSSELL, B., Bankruptcy Judge.

The debtor and its president appeal two bankruptcy court orders certifying a chapter 7[2] trustee following a disputed trustee election under § 702. We AFFIRM.

## I. FACTS

Appellant American Eagle Mfg., Inc. ("American Eagle" or the "debtor") filed a voluntary chapter 11 case on May 29, 1996. Prior to bankruptcy, the debtor was engaged in manufacturing aluminum hull vessels in La Conner, Washington. Appellant James R. Caudill was the debtor's president.

During the pendency of the chapter 11 case, the unsecured creditors' committee (the "committee") and other creditors investigated the debtor's financial affairs. The investigation allegedly[3] revealed that substantial pre- and postpetition transfers of assets had been made to insiders, including Caudill, and that Caudill had allegedly ceased all of the debtor's operations and transferred contracts and other assets to a corporation which he allegedly owned named the "Hammerhead Corporation." The creditors moved to appoint a CPA with auditing experience as trustee, and the committee moved to pursue collection of the insider transfers.

The debtor in turn filed an *ex parte* motion to voluntarily convert the case to chapter 7. On March 7, 1997, the court entered an order granting the debtor's motion and converting the case to chapter 7. The United States Trustee ("UST") appointed Peter Arkinson as the interim chapter 7 trustee. The court issued a notice which, *inter alia*, scheduled

---

1. Hon. David E. Russell, Chief Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. These allegations are asserted in the Motion for Order Certifying Election of Trustee jointly filed by Foster Pepper & Shefelman P.L.L.C. and appellees N.C. Machinery, Inc. and Alaskan Copper & Brass.

the § 341(a) meeting of creditors for April 30, 1997.

The attorney for the UST presided at the § 341(a) meeting on April 30, 1997. Representatives of four unsecured creditors, including appellee N.C. Machinery, Inc. ("Machinery") and appellee Alaskan Copper & Brass ("Alaskan Copper") appeared in person. Secured creditors Skagit State Bank ("Skagit") and His Highness the Aga Khan appeared through counsel. Also in attendance were the debtor's counsel, a representative of the debtor, and the committee's counsel.

The UST's attorney stated throughout the § 341(a) meeting that she was accepting any and all election requests and votes, and that objections would be resolved later:

> MS. GEIGER [UST'S COUNSEL]: I didn't want my comments at all to mean that you're not entitled to request [an election]. I don't know the answer. . . .

Transcript of April 30, 1997 § 341(a) Meeting, p. 3.

> I'm going to go ahead and request creditors that want to vote. At this point I don't know if we have a properly called election, but I want to proceed and take votes, and I'll—

*Id.* at 5.

> I'd be willing to accept proofs of claim at this time and deem them filed. If anyone wants to file a proof of claim, they can submit proofs of claim to me.

*Id.* at 9–10.

The Aga Khan and the four unsecured creditors who were present[4] requested an election and cast votes in favor of appellee Kent Mordy, a CPA with extensive bankruptcy experience employed by the accounting firm of Coopers & Lybrand. In addition, counsel for the committee delivered ballots from five additional creditors who were not present.[5] The UST's attorney offered Skagit a proof of claim and the opportunity to cast a ballot, which Skagit declined.

The debtor's counsel objected to the ballots submitted by the absent creditors on the basis that they had not complied with applicable rules regarding voting by proxy and were therefore ineligible to vote. He objected to the Aga Khan's ballot on the ground that he was a secured creditor and thus ineligible to vote. He further stated that the debtor disputed the entire portion of a $1.2 million claim filed by the Hone Heke Corporation ("Hone Heke"), which had not submitted a ballot.

The UST's attorney closed the April 30, 1997 session of the § 341(a) meeting by stating:

> I'll close the election at this point. And I will file a report of election with the Court; serve all those parties who are present today; and then anyone who disputes my report has 10 days to request

---

4. The five creditors who attended the § 341(a) meeting and voted in favor of Mordy, and the amount of their claims, were as follows:

| CREDITOR | AMOUNT OF CLAIM |
| --- | --- |
| Tsubota Industrial Incorporated | $ 28,865.73 |
| Alaskan Copper & Brass | $ 42,326.51 |
| Hough Marine—Hamilton Jet | $ 30,496.49 |
| N.C. Machinery Company | $ 93,526.44 |
| His Highness the Aga Khan | $640,000.00 |
| TOTAL | $835,215.17 |

5. The five creditors who did not attend the § 341(a) meeting but submitted ballots, and the amount of their claims, were as follows:

| CREDITOR | AMOUNT OF CLAIM |
| --- | --- |
| Alaska Diesel Electric | $ 8,932.00 |
| Foster Pepper & Shefelman | $ 19,712.92 |
| Mercury Marine | $ 37,324.92 |
| Pacific Detroit Diesel | $ 23,370.28 |
| Cummins Northwest | $ 21,374.50 |
| TOTAL | $110,714.62 |

relief from the Court to resolve the dispute if—or resolve the election if they don't agree with my conclusions.

MR. ARKISON [INTERIM TRUSTEE]: (Inaudible).

MS. GEIGER: What I was going to do is—I don't know if we can set a date certain for the 341 meeting. We may just have to just have to [sic] simply renotice. What is your next available calendar?

MR. ARKISON: Well, I've got the first Tuesday in June, June 3rd at 10:30—(inaudible). If they could do it at 10:30—

MS. GEIGER: Let's continue this 341 meeting to June 3 at 10:30 in this room. We'll continue this meeting.

. . . .

We will tentatively schedule it for June 3 at 10:30, the continued meeting.

Transcript of April 30, 1997 § 341(a) Meeting, p. 12–13.

On May 7, 1997, Ms. Geiger filed a report of the disputed election ("UST's report"), which advised the court that four creditors holding claims totaling $195,215.17 [6] had requested an election of a permanent trustee at the § 341(a) meeting. The UST's report detailed the divergence of opinion in the case law on the appropriate method of calculating the "universe of claims" for determining whether the requisite 20% of creditors had requested an election and had voted.[7] Utilizing the various methods presented in the case law, the UST's report set forth five alternative calculations of the universe of claims in this case, which were summarized as follows:

| Method of Calculating the Universe of Claims | Total Unsecured, Nonpriority Claims — Universe of Claims | 20% Requirement |
|---|---|---|
| A Total unsecured claims per **schedules excluding** two insider claims and two claims scheduled as disputed | 1,018,106.92 | 203,621.38 |
| B Total unsecured claims per **proofs of claim excluding** two insider claims (no POC excluded as disputed because no formal objection filed) | 1,959,323.65 | 391,864.73 |
| C Total unsecured claims per **proofs of claim** excluding two insider claims and Hone Heke claim | 609,323.65 [8] | 141,042.73 |
| D Total unsecured claims **per schedules as supplement [sic] by proofs of claim excluding:** 1) three insider claims, and 2) one claim scheduled as disputed. Excluded no POC as disputed because no formal objections filed, though one creditor who filed claim scheduled as disputed. | 2,243,103.07 | 448,620.61 |

6. The transcript of the § 341(a) meeting reflects that five creditors holding claims totaling $835,-215.17 requested an election. *See supra* note 4. The UST's report excluded the Aga Khan and his $640,000.00 secured claim from this calculation.

7. *See In re Lindell Drop Forge Co.*, 111 B.R. 137, 145 (Bankr.W.D.Mich.1990), and *In re Poage*, 92 B.R. 659, 664 (Bankr.N.D.Tex.1988) (determining universe of claims based on debtor's schedules); *In re Lake States Commodities*, 173 B.R. 642, 646 (Bankr.N.D.Ill.1994) (determining universe of claims from proofs of claim on file rather than schedules); *In re San Diego Symphony Orchestra Ass'n*, 201 B.R. 978, 980 (Bankr. S.D.Cal.1996), and *In re Michelex Ltd.*, 195 B.R. 993, 1008 (Bankr.W.D.Mich.1996) (determining universe of claims based on debtor's schedules, as supplemented or modified by filed proofs of claim).

8. According to the Motion for Order Certifying Election filed in response to the UST's report, the correct number in this category was $709,-

| E | Total unsecured claims per **schedules supplemented by proofs of claim,** excluding: 1) three insider claims, 2) one claim scheduled as disputed where no POC filed, and 3) Hone Heke claim | 993,103.07 | 198,620.61 |
|---|---|---|---|

UST's Report, p. 11 (emphasis in original).

The UST's report concluded by stating:

[T]he United States Trustee files this report and indicates to the Court that he is not able to advise the Court regarding 1) whether an election was requested by the requisite 20 percent of unsecured creditors; and 2) whether the proposed trustee was elected by a majority of the requisite 20 percent. Accordingly, the United States Trustee requests the Court to consider this Report of Disputed Election of Chapter 7 Trustee to be a report of a disputed election pursuant to F.R.B.P. 2003(d). Further, the United States Trustee requests, that parties seeking to resolve the dispute file a motion within the 10 day period allowed under F.R.B.P. 2003(d), to resolve the dispute.

*Id.* at 17–18.

On May 15, 1997, eight days after the filing of the UST's report and fifteen days after the April 30, 1997 election, a motion seeking certification of the election and appointment of Mordy as the permanent trustee (the "certification motion") was filed by Machinery, Alaskan Copper, and Foster Pepper and Shefelman P.L.L.C. (the "moving creditors"). The certification motion contended that the election was undisputed, that no party in interest had objected to Mordy's appointment, and that each of the UST's alternative calculations would result in Mordy's certification if the calculations were revised to exclude disputed, contingent and/or unliquidated claims.

According to the moving creditors, the UST's attorney had agreed that contingent or unliquidated claims should not be included, but had stated that determining whether any claims were unliquidated was beyond the scope of the UST's role in tabulating the election results. As a result, the UST's calculations included all scheduled claims and

all filed proofs of claim except for claims which the debtor admitted were held by insiders. The certification motion contended that the $1,250,000.00 claim of Hone Heke and the $123,232.00 claim of Clean Sound Cooperative, Inc. ("Clean Sound") should have been excluded as disputed, contingent and/or unliquidated claims.

On May 20, 1997, the debtor filed a motion to strike the certification motion as untimely. The debtor asserted that the deadline under Rule 2003(d) was May 10, 1997, 10 days after the § 341(a) meeting on April 30, that the certification motion was therefore 5 days late, and that Rule 9006(b)(2) prohibited any enlargement of time. Caudill and the interim trustee filed joinders in the motion to strike.

The moving creditors' opposition to the motion to strike argued that Rule 2003(d) was inapplicable because Mordy's election was unanimous and undisputed. They contended that the UST's report simply sought clarification on a legal issue and did not dispute the election. They argued that the motion to strike, filed twenty days after the § 341(a) meeting, was the first notice that any party objected to the election, and was motivated by Caudill's personal interests rather than the interests of creditors and the bankruptcy estate.

A declaration and a memorandum in opposition to the motion to strike were filed by the committee's counsel (Danial Pharris) and the Aga Khan's counsel, respectively. Both pleadings described numerous pre- and postpetition actions by the debtor and Caudill which appeared to have been taken solely for Caudill's benefit, and asserted that no dispute or objections to Mordy's election were raised at the § 341(a) meeting. Pharris's declaration asserted that debtor's objection to the election was an attempt to interfere with the creditors' selection of a trustee who would complete the investigation of the debt-

323.65, and the 20% requirement was accurately calculated on that total.

or's affairs and recover pre- and postpetition transactions between the debtor and insiders.

The debtor's counsel filed an affidavit contradicting the assertion that the election was undisputed, and stating that he had in fact objected and disputed the voting at the § 341(a) meeting. The interim trustee filed a declaration similarly describing disputed issues raised at the § 341 meeting.

The bankruptcy court held a hearing on the motion to strike on May 30, 1997. The court denied the motion following oral argument, and appointed Mordy as the permanent trustee. The court entered an order to that effect on June 2, 1997 (the "June 2, 1997 order"). Shortly thereafter, the court approved the employment of Pharris and the law firm of Lasher Holzapfel Sperry & Ebberson P.L.L.C. as the trustee's counsel.

On June 12, 1997, Caudill filed a motion for reconsideration of the June 2, 1997 order, arguing that the election was disputed and the motion was erroneously denied on the basis that the dispute was not "dispositive." The motion contended that the 10–day time limit of Rule 2003(d) applied to all disputes, not merely "dispositive" disputes. The motion further argued that the court violated due process by ruling on the merits of the trustee election at the hearing on the motion to strike, because the certification motion had not been fully briefed, responses were not due until June 5, 1997, and the motion was not scheduled for hearing until June 11, 1997. The debtor filed a one-paragraph joinder.

On July 15, 1997, the court entered an order denying the debtor's motion to strike and scheduling further oral argument on the merits of the election dispute. The court issued an accompanying memorandum on the same date, explaining that the court had obtained the tape of the § 341(a) meeting in connection with the reconsideration motion and learned that (1) objections were in fact "clearly and unequivocally" raised by the debtor's counsel at the § 341(a) meeting, and (2) the meeting was not concluded on April 30 but was instead continued to June 3, 1997. As a consequence, the court denied the mo-

tion to strike due to the continuance of the § 341(a) meeting, found that the election was disputed due to the objections, and scheduled further oral argument on the certification motion.

Caudill and the debtor filed a timely appeal of the July 15, 1997 order denying the motion to strike.[9]

On August 4, 1997, Caudill filed an opposition to the certification motion, contending that the election was invalid because it was requested by creditors holding less than 20% of the amount of qualified claims. Caudill asserted that the universe of claims under his calculations totaled $2,189,010.50, and that the creditors who requested an election held claims of $195,215.17, or 8.9%.

Caudill utilized a six-step analysis to determine the 20% "requesting requirement" of § 702, which involved (1) examining the unsecured claims listed on the debtor's schedules, (2) adding the unsecured portion of claims listed as secured on the schedules, (3) subtracting creditors listed as holding disputed, contingent, or unliquidated claims, (4) adjusting the universe of claims by utilizing proofs of claim on file, (5) subtracting creditors with claims subject to pending objections, and (6) subtracting claims held by insiders and creditors with materially adverse interests.

Caudill included an unsecured deficiency claim in the amount of $93,232.30 purportedly held by Skagit under "step two" of this formula. Under "step three," he excluded the disputed claims of Padden Creek Marine ($18,757.30) and William Wendell ($22,457.30), but did not exclude the claims of Hone Heke ($1,250,000.00) and Clean Sound ($123,232.00).

Caudill argued that Machinery and Alaskan Copper had impermissibly filed objections to the Hone Heke and Clean Sound claims after the trustee election. Consequently, the claims were not subject to a valid pending objection and should be included in the calculation. Caudill excluded the claims of Mercury Marine, Alaska Diesel Electric, Foster Pepper & Shefelman, and Pacific Detroit Diesel on the ground that

9. This appeal was designated as BAP No. WW–97–1574–RRyRu.

their ballots did not comply with the requirements of Rule 2006 regarding proxy voting, and excluded the claim of the Aga Khan because his claim was secured. Caudill asked the court to void the election and appoint the interim trustee as the permanent trustee. The debtor filed a one-paragraph joinder, and the interim trustee filed a response supporting Caudill's methodology and the results of his calculations.

Mordy filed a reply, arguing that Caudill's analysis was flawed because it (1) assumed only one correct methodology for calculating the universe of claims despite alternatives provided in the case law, (2) manufactured an unsecured claim for Skagit, (3) included the unliquidated and disputed claims of Hone Heke and Clean Sound, and (4) excluded the ballots of Mercury Marine, Alaska Diesel Electric, Foster Pepper and Shefelman, Pacific Detroit Diesel, and the Aga Khan, which Mordy claimed were voted directly by the creditors rather than by proxy and were thus valid. Mordy asserted that the requisite 20% of creditors requested the election and voted under any of the various alternative formulas, including Caudill's, if the disputed Hone Heke and Clean Sound claims were correctly excluded.

Mordy also suggested that the court should view Caudill's opposition with suspicion given his status as an insider whose activities would be investigated by an independent trustee. Mordy pointed out that although the debtor and the interim trustee joined in Caudill's opposition, Caudill had the most to lose if a skilled accountant were to analyze the debtor's financial history and conduct in the chapter 11 case.

The court heard oral argument on the certification motion on August 8, 1997. Present were counsel for Mordy, Caudill, the debtor, the UST, the interim trustee, and the Aga Khan. Caudill's counsel began by questioning Mordy's standing to contest the election, and noting that the creditors who requested the election were not present.

Caudill's and the debtor's counsel then presented argument concerning the status of the Hone Heke and Clean Sound claims.[10]

The court announced its findings of fact and conclusions of law on the record at the conclusion of the hearing. The court adopted the reasoning of *In re Michelex Ltd.*, 195 B.R. 993, 1008 (Bank.W.D.Mich. 1996), which calculated the universe of claims based on the debtor's schedules, as modified by proofs of claim on file. The court explained its calculations in this case in detail, and ruled that both the 20% "requesting requirement" and the 20% "voting requirement" under § 702 had been satisfied. The court concluded that the election should be confirmed and Mordy should be appointed the trustee.

On September 5, 1997, the court entered an order certifying Mordy's election. Caudill and the debtor appeal.[11]

## II. ISSUES

A. Whether the appellees have standing on appeal.

B. Whether the bankruptcy court properly calculated the "universe of claims" for purposes of § 702.

C. Whether Rule 2003(d) is invalid because it abridges and modifies substantive rights provided in § 702.

## III. STANDARD OF REVIEW

■ Standing is a jurisdictional issue which is open to review at all stages of the litigation. *National Organization For Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). Questions of standing are reviewed *de novo*. *Barrus v. Sylvania*, 55 F.3d 468, 469 (9th Cir.1995).

■ The bankruptcy court's determination of whether the creditors' motion to resolve the election dispute was timely under the Rules requires a determination of the date on which the § 341(a) meeting was held. The

10. The transcript of the August 8, 1997 hearing provided in the record is a partial transcript, and contains argument by counsel for Caudill and for the debtor only.

11. This appeal was designated as BAP No. WW–97–1698–RRyRu, and was consolidated with the appeal of the July 15, 1997 order denying the motion to strike (BAP No. WW–97–1574–RRyRu) by an order of the BAP dated December 3, 1997.

resolution of this issue involves a legal conclusion subject to *de novo* review. *In re Conco Bldg. Supplies, Inc.,* 102 B.R. 190, 191 (9th Cir. BAP 1989).

■ A bankruptcy court's conclusions of law regarding a disputed trustee election under § 702 are reviewed *de novo,* and its findings of fact are reviewed for clear error. *In re Oxborrow,* 104 B.R. 356, 360 (E.D.Wash.1989), *aff'd,* 913 F.2d 751 (9th Cir. 1990). The clearly erroneous standard requires the reviewing court to have a definite and firm conviction that a mistake has been made. *Id.* at 360. A bankruptcy court's calculation of whether the 20% "requesting" and "voting" requirements of § 702 have been met is reviewed for an abuse of discretion. *Oxborrow,* 913 F.2d at 754.

## IV. DISCUSSION

### A. *Whether The Appellees Have Standing On Appeal*

■ The Ninth Circuit Court of Appeals has adopted the "person aggrieved" test derived from the Bankruptcy Act of 1898 as the standard for determining whether a party possesses appellate standing under the Code. *In re CFLC, Inc.,* 89 F.3d 673, 675 (9th Cir.1996); *In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1334 (9th Cir. 1985); *In re Fondiller,* 707 F.2d 441, 442–43 (9th Cir.1983). The test limits appellate standing to "those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court." *Fondiller,* 707 F.2d at 442.

Appellants contend that Machinery and Alaskan Copper [12] lack appellate standing because they failed to appear and participate in the August 8, 1997 hearing to resolve the election dispute, as required by Local Rule 9013–1(e)(1). [13] They also contend that Machinery and Alaskan Copper waived their appeal rights by providing written notice that they would not independently respond to the appeal and authorizing Mordy to file an appellate brief on their behalf.

■ Appellants' first contention ignores the discretionary language of the Local Rule, which provides that "failure to appear ... *may* be deemed by the court to be an admission that the motion, ... is without merit." (Emphasis added.) The bankruptcy court was entitled to consider their pleadings regardless of their appearance. Appellees' decision not to attend the August 8 hearing did not deprive them of appellate standing.

■ Furthermore, Machinery and Alaskan Copper retained counsel and filed a timely appellate brief in conjunction with Mordy. Their earlier authorization of Mordy's counsel to represent their interests in this appeal did not constitute a waiver of their appeal rights. Machinery and Alaskan Copper are directly and materially affected by the choice of a trustee, and they therefore possess standing as "aggrieved persons" to participate in these consolidated appeals. *See In re Martech USA, Inc.,* 188 B.R. 847, 850 (9th Cir. BAP 1995), *aff'd,* 90 F.3d 408 (9th Cir. 1996).

■ Appellants challenge Mordy's standing on the basis that he was not a party to the bankruptcy proceedings and his only claim to standing arises from the expectation of receiving fees from the estate. *In re Sandhurst Securities, Inc.,* 96 B.R. 451, 454 (Bankr.S.D.N.Y.1989). Appellees argue that Mordy's potential loss of the opportunity to administer the estate and earn commissions confers standing. *In re Metro Shippers, Inc.,* 63 B.R. 593, 598 (Bankr.E.D.Pa.1986).

Appellants' reliance on *Sandhurst Securities* is misplaced. The bankruptcy court in *Sandhurst Securities* considered the standing of an interim trustee to file a motion to resolve an election dispute; a permanent

---

**12.** Appellants also contend that Foster Pepper and Shefelman P.L.L.C. and the Aga Khan lack appellate standing. Those creditors did not file an appellate brief or otherwise participate in these consolidated appeals.

**13.** Local Rule 9013–1(e)(1) (W.D.Wash.) provides:

*Appearance at Hearings Required.* Except as provided in subsection (f)(2) of this Rule, appearance is required at all scheduled hearings. Failure to appear at the date and time appointed for hearing may be deemed by the court to be an admission that the motion, or the opposition to the motion, as the case may be, is without merit.

trustee had not yet been certified. The court concluded that an interim trustee, as a candidate for election to a bankruptcy trusteeship, had no interest that could be affected by the underlying bankruptcy case, and thus no standing to challenge an election. *Sandhurst* at 454.

Mordy is the certified permanent trustee in this case, not merely a candidate for trusteeship. He has investigated Caudill's allegedly fraudulent conduct, filed suit against Caudill, and consequently incurred substantial administrative fees. Mordy's status as an elected and certified trustee, and his direct pecuniary interest in this case resulting from his activities as trustee, fulfill the requirements for appellate standing. *See Metro Shippers*, 63 B.R. at 598.[14]

B. *Whether The Bankruptcy Court Properly Calculated The "Universe Of Claims" For Purposes Of § 702*

 Section 702[15] governs the election of a permanent trustee in a chapter 7 bankruptcy case. To be eligible to vote, a creditor must hold an allowable, fixed, liquidated, and unsecured claim, must not hold an interest materially adverse to other eligible creditors, and must not be an insider. 11 U.S.C. § 702(a). An election is valid only if creditors holding 20% of eligible claims request an election. 11 U.S.C. § 702(b). A candidate is elected trustee only if creditors holding 20% of the eligible claims actually vote and a majority of such claims is voted for the candidate. 11 U.S.C. § 702(c). The 20% requesting requirement of § 702(b) is independent of the 20% voting requirement of § 702(c). *Oxborrow*, 104 B.R. at 360, *aff'd*, 913 F.2d at 752; *see also Michelex*, 195 B.R. at 998.

As noted in Section I, a number of different methods for calculating the 20% requesting and voting requirements of § 702 have been developed.[16] The bankruptcy court in this case adopted the method used by the bankruptcy court in *Michelex*, and calculated the universe of claims based on the debtor's schedules as modified by the proofs of claim on file. This was a very reasonable approach, and was also the method urged by the appellants in the proceedings below.

According to the court's order certifying the election, the total amount of "scheduled unsecured claims supplemented by proofs of claim filed" was $3,226,240.82. The court deducted the following claims totaling $2,328,867.42:

(1) claims of creditors who were scheduled as unsecured but who filed proofs of claim indicating their claims were secured (the Aga

---

**14.** Without deciding the issue, we note that the debtor's standing to appeal the order certifying the election is questionable. *See In re Kehoe*, 221 B.R. 285 (1st Cir. BAP 1998) (dismissing chapter 7 debtors' appeal of order certifying trustee election under § 702 for failure to meet "person aggrieved" standard for appellate standing). Caudill, who holds an insider claim against the estate, appears to have standing to challenge the order.

**15.** 11 U.S.C. § 702 provides:

**§ 702. Election of trustee**

(a) A creditor may vote for a candidate for trustee only if such creditor—

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

(b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

(c) A candidate for trustee is elected trustee if—

(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.

(d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

**16.** *See supra* note 7.

Khan, Pat Rimmer Tire, Sea Technology, and T & A of Everett, in the aggregate amount of $448,174.26);

(2) disputed, contingent, unliquidated claims (Clean Sound, Hone Heke, Padden Creek Marine and William Wendell, in the aggregate amount of $1,401,489.30); and

(3) claims of insiders (James and Mary Caudill, and Jamari, Inc. dba La Conner Seafood, in the aggregate amount of $479,203.86).

The court determined that the remaining claims totaled $897,373.40, of which 20% was $179,474.68.[17]

The court then determined that creditors holding claims totaling $195,215.00, or more than 20% of the eligible voters, had properly requested an election and also voted for Mordy, and that the requirements of § 702 were satisfied. In order to reach this conclusion, the court excluded the unsecured portion of Skagit's claim as too speculative, and the claims of the creditors who were not present at the election on the basis that they failed to meet the proxy requirements of Rule 2006.

On appeal, appellants complain that the bankruptcy court's exclusion of the Hone Heke and Clean Sound claims was erroneous because objections to those claims were not filed at the time of the § 341(a) meeting. The record, however, reflects that the debtor's counsel specifically objected to the Hone Heke claim at the § 341(a) meeting, and described that claim as unliquidated:

> [MS. GEIGER]: [I]s there any portion of [the Hone Heke] claim that the debtor disputes?
>
> MR. WILLIG [THE DEBTOR'S COUNSEL]: Yeah, I believe we dispute the entire portion of that claim.
>
> MS. GEIGER: Have you filed any formal claim dispute—
>
> MR. WILLIG: No, they were allowed relief from stay in the bankruptcy proceeding and are litigating in Federal District Court, basically, with the debtor's insurance company on that claim.
>
> . . . .
>
> MR. WILLIG: Just for the record we would object to Hone Heke's—
>
> MS. GEIGER: Okay.
>
> MR. WILLIG:—ballot.

Transcript of April 30, 1997 § 341(a) Meeting, p. 11.

The record on appeal reflects that the proof of claim filed by Clean Sound listed "indemnity-personal injury" as the basis of the claim, and stated that a judgment was obtained on June 14, 1996 and vacated on October 1, 1996. The record thus supports the bankruptcy court's finding that the claim was unliquidated at the time of the § 341(a) meeting.

Appellants also complain that the bankruptcy court erroneously excluded Skagit's $93,232.00 unsecured deficiency claim. This argument overlooks the fact that Skagit affirmatively declined the opportunity to file a proof of claim and cast a ballot at the § 341(a) meeting. In addition, the bankruptcy court excluded the claim on an appropriate basis, stating:

> The schedules total $1,397,403. To this Caudill wants to add the unsecured deficiency due the Skagit State Bank. I have not done so because the amount involved appears to me at this point to be too nebulous.

Transcript of August 8, 1997 Bankruptcy Court Ruling, pp. 3–4. *Accord Michelex*, 195 B.R. at 1007 (excluding unsecured portion of undersecured claims from calculations).

■■■■ In sum, the bankruptcy court conducted a meticulous and thorough analysis of the dispute, despite the less than perfect circumstances under which the election was conducted. This is particularly true in light of the fact that a trustee election dispute requires a bankruptcy court to balance the need for an accurate resolution of fact-

---

**17.** This amount overstated the universe of claims by $28,500.00, but the mathematical error did not affect the outcome. Exhibit A to the court's order listed Caudill's claim as $240,607.54 in the category entitled "Scheduled Claims as Supplemented by Filed Proofs of Claims." The text of the order, however, deducted only $212,107.54 for his claim. Deducting the additional $28,500.00 would result in a claims universe of $868,873.40, 20% of which would total $173,774.68.

based questions at the initial stage of a case with the need for a speedy resolution of the dispute, and that it is both undesirable and unworkable to turn a trustee election into a full scale trial. *In re Tartan Const. Co.*, 4 B.R. 655, 658 (Bankr.D.Neb.1980).

It is also true in light of the troubling dynamic of the proceedings below. The record reflects that the election dispute was driven by Caudill. The objections of the debtor and the interim trustee were essentially *pro forma*, and not a single creditor objected to Mordy's appointment. Under all of the circumstances, the bankruptcy court properly calculated the universe of claims under § 702, and properly appointed Mordy, the creditors' unanimous choice, as the permanent trustee.

C. *Whether Rule 2003(d) Is Invalid Because It Abridges And Modifies Substantive Rights Provided In § 702*

Appellants argue that the certification motion was 5 days late under Rule 2003(d), and thus the election of Mordy as the chapter 7 trustee was invalid. We disagree.

■ We have examined § 702 and have found no reference to any requirement that creditors electing their choice for the chapter 7 trustee must bring any allegedly disputed election before the bankruptcy court. The only requirement to be elected trustee under § 702 is to receive the requisite votes.

Thus, what Rule 2003(d) has done, according to the appellants, is invalidate an election meeting all the requirements of § 702 by imposing a sanction totally inconsistent with the clear language of § 702. Once Mordy satisfied the voting requirements of § 702, he was elected the chapter 7 trustee.

■ The fact that the court declared the results of the election at a later time does not change the fact that Mordy was elected the chapter 7 trustee. Thus, Rule 2003(d)'s purported invalidation of the election of Mordy would clearly abridge and modify the substantive rights of creditors to elect a trustee of their choice under § 702. As such, it is in

clear violation of 28 U.S.C. § 2075, and is therefore invalid.[18]

28 U.S.C. § 2075 provides:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under Title 11.

Such rules shall not abridge, enlarge or modify any substantive right.

The Supreme Court shall transmit to Congress not later than May 1 of the year in which a rule prescribed under this section is to become effective a copy of the proposed rule. The rule shall take effect no earlier than December 1 of the year in which it is transmitted to Congress unless otherwise provided by law.

Section 702(c) provides:

(c) A candidate for trustee is elected trustee if—

(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.

Rule 2003(d) provides:

(d) Report to the Court.

The presiding officer shall transmit to the court the name and address of any person elected trustee or entity elected a member of a creditors' committee. If an election is disputed, the presiding officer shall promptly inform the court in writing that a dispute exists. Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. If no motion for the resolution of such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

---

**18.** Rule 2003(d) is unlike rules such as Rule 4003 and Rule 4007, which cut off substantive rights

pursuant to specific statutory authority, namely, §§ 522(1) and 523(c), respectively.

Rule 2003(d) is well meaning but misguided. It is well meaning by attempting to get a disputed election before the bankruptcy court as soon as possible, by providing that "[i]f an election is disputed, the presiding officer shall promptly inform the court in writing that a dispute exists." However, the last sentence, providing that "[i]f no motion for the resolution of such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case" is an invalid attempt to invalidate an election under § 702 by not timely filing such a request. There is nothing in § 702 which allows for such an invalidation of the election.

There are far better ways of encouraging a prompt resolution of a disputed election. For example, the Rule could require the court to set the matter for hearing within a specified period of time, or require the presiding officer to request a hearing within 10 days after the election. In the normal course of events, even without a rule, a party in interest will request a hearing.

 Although "a party challenging a bankruptcy rule has a 'heavy burden' of showing that the rule deals with a matter of substance rather than procedure," when a procedural rule is "so harsh as to arbitrarily [or unreasonably] frustrate a substantive right," application of that rule in such a manner offends 28 U.S.C. § 2075. *See In re Hill,* 811 F.2d 484, 487 (9th Cir.1987); *In re Neese,* 87 B.R. 609, 611 (9th Cir. BAP 1988) (citing *Hill,* 811 F.2d at 487).

In *In re Pacific Atlantic Trading Co.,* 33 F.3d 1064, 1066–67 (9th Cir.1994), the Ninth Circuit held that a claim that was filed in a chapter 7 case more than ninety days after the date set for the meeting of creditors as required by Rule 3002 was allowed despite its untimeliness because §§ 501 and 502 impose no time limit or other qualification on the filing of a claim. "Thus, to construe section 501 as incorporating Rule 3002(c)

would create a result at odds with the plain language of the Code" and would offend 28 U.S.C. § 2075. *Id.* at 1066. Accordingly, to avoid such a result, the Ninth Circuit interpreted Rule 3002(c) consistently with § 501 and held that Rule 3002(c) did not disallow a late claim, but simply divided claims into two categories—timely and late for purposes of distribution under § 726. *Id.* at 1066–67.[19]

Here, Rule 2003(d)'s 10–day period in which to file a motion to resolve an election dispute unreasonably interferes with the substantive rights of creditors who have elected a trustee. Section 702 establishes the criteria for electing a permanent trustee. It does not provide a mechanism for disputing an election. Because § 702 does not condition the election of a trustee that is disputed at the creditors' meeting on the timely filing of a motion to resolve the dispute, Rule 2003(d) acts in a manner inconsistent with § 702 by invalidating what otherwise may be a valid trustee election.

In addition, even if the requirements of Rule 2003(d) are procedural rather than substantive, the 10–day period unreasonably frustrates the substantive right established by § 702 because it: (1) impermissibly shifts the burden to the creditors who voted for the trustee to bring the dispute to the court's attention despite their belief that the election was valid under § 702; and (2) provides an unreasonably short time frame in which to file the motion to resolve an election dispute. This is especially true given the fact that the presiding officer at the § 341(a) meeting is not obligated to file a report of the election dispute with the court within the 10–day period.

Because of these defects, Rule 2003(d) cannot be interpreted in a manner consistent with § 702 as was done in *Pacific Atlantic. See Pacific Atlantic,* 33 F.3d at 1066–67.

The facts of the case before this Panel illustrate how the 10–day requirement of Rule 2003(d) directly conflicts with § 702,

---

**19.** The applicability of *Pacific Atlantic* has been prospectively altered by the Bankruptcy Reform Act of 1994. The new legislation created § 502(b)(9), which specifically provides that a claim may be disallowed if proof of such claim is not timely filed. *See* 11 U.S.C. § 502(b)(9).

However, § 502(b)(9) applies to cases filed after October 22, 1994. The holding of *Pacific Atlantic* has since been limited to chapter 7 cases filed prior to the effective date of the Bankruptcy Reform Act of 1994. *See In re Osborne,* 76 F.3d 306, 310 (9th Cir.1996).

producing a very unfair result. Here, we have an independent trustee (Mordy) elected by the requisite majority under § 702. Not a single creditor voted against Mordy. The opposition by Caudill to Mordy was an attempt to prevent Mordy from investigating the debtor as well as Caudill.

The record in this case reflects substantial confusion concerning every aspect of the purported election. During the § 341(a) meeting, the UST's counsel made several ambiguous statements, and stated that she was unsure whether an election was taking place:

> I'm going to go ahead and request creditors that want to vote. At this point I don't know if we have a properly called election, but I want to proceed and take votes, . . .

Transcript of April 30, 1997 § 341(a) Meeting, p. 5.

When the § 341(a) meeting concluded, the UST's counsel did not state that Mordy was the elected trustee, and the debtor's counsel did not state that he was contesting anything. The UST's counsel left the meeting stating that she would file a report of the election with the court and that the parties would have 10 days to object to her report when she filed it with the court, and then continued the § 341(a) meeting to June 3, 1997. She did not, as required by Rule 2003(d), transmit to the court the name and address of any person elected trustee, nor did she promptly inform the court in writing that a dispute existed. Instead, the UST's report advised the court that the UST could not certify an election and that the UST needed the court's assistance to determine whether the required percentage of eligible claims had voted.

It is undisputed that the certification motion was filed on May 5, 1997, 15 days after the meeting at which the election was held and thus, under Rule 2003(d), 5 days late.

At the hearing on the merits of the certification motion, the debtor's counsel aptly described the situation:

> I think it's fair to say the Court has certainly got an excellent sense that from the get-go this trustee election was a mess.

Partial Transcript of August 8, 1997 Proceedings, p. 12.

The unusual facts of this case highlight the problems with Rule 2003(d) and the reasons why it is in violation of 28 U.S.C. § 2075. As written, Rule 2003(d) may invalidate an otherwise valid election if a party does not file a motion to resolve an election dispute within the 10-day period. The effect of this procedure is to create an unwarranted bias towards invalidating a trustee election.

## V. CONCLUSION

The appellees' direct pecuniary interest in the outcome of the trustee election satisfies the "aggrieved persons" test for standing adopted by the Ninth Circuit Court of Appeals, and they accordingly possess standing to participate in these consolidated appeals.

The method adopted by the bankruptcy court for calculating the universe of claims under § 702 was reasonable and the court's calculations were accurate. The bankruptcy court's order certifying the election and appointing appellee Kent Mordy as the permanent trustee is AFFIRMED.

Because the 10-day limit under Rule 2003(d) is invalid, the bankruptcy court's order denying appellants' motion to strike the certification motion is AFFIRMED.

RUSSELL, D., Bankruptcy Judge, dissenting.

I disagree with the majority's novel conclusion that Rule 2003(d) abridges or modifies the substantive rights found in § 702 in violation of 28 U.S.C. § 2075. Accordingly, I respectfully dissent.

The Federal Rules of Bankruptcy Procedure were promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075. *See In re Greene*, 223 B.R. 548, 550 (N.D.Cal.1998). As the Ninth Circuit has explained:

> The [ ] bankruptcy rules were studied by committees of
>
> experts, then adopted by the Supreme Court, and became effective only after submission to Congress for review. . . . It cannot be assumed easily that the Supreme Court acted outside the power

delegated to it under § 2075, or that Congress allowed rules to become operative which would effect substantive rights.

*Hill,* 811 F.2d at 487 (quoting *Wolff v. Wells Fargo Bank (In re Moralez),* 618 F.2d 76, 78 (9th Cir.1980)). Thus, there is a strong presumption that the Bankruptcy Rules do not modify substantive rights. *Greene,* 223 B.R. at 550; *In re Meyer–Midway, Inc.,* 68 B.R. 181, 183 (N.D.Ill.1986) ("It is presumed that the Supreme Court acted within the limits of Section 2075 when drafting the rules and that if they had overstepped the bounds of their authority Congress would have stepped in to modify the rule."). Therefore, the Rules are presumptively valid if they are not inconsistent with a statute. *In re Dominguez,* 51 F.3d 1502, 1507 (9th Cir.1995).

The majority concludes that Rule 2003(d) and § 702 are inconsistent. I believe that they can be read in harmony. Standing alone, § 702(c) is incomplete. It provides no mechanism for verifying an election result. Even if a candidate were to receive all the votes at the § 341(a) hearing, he could not serve until the court declared him to be the new trustee.

Rule 2003(d) provides the means to certify the election. Under the Rule, the UST can declare the winner at the conclusion of the § 341(a) hearing and transmit the name and address of the declared winner to the court. FED.R.BANKR.P. 2003(d). However, if a winner cannot be declared at the conclusion of the election, as in this case, there is a dispute which the U.S. Trustee is not permitted to resolve.[20] *See* FED.R.BANKR.P. 2003 advisory committee's note (1991). An interested party must move the court to resolve the dispute and the court declares the winner. *Id.* Rule 2003(d)'s 10–day limitation merely requires that the interested party move quickly to resolve the dispute in order to ensure the prompt administration of the estate. *See Sandhurst Securities,* 96 B.R. at 457 (noting that election disputes can effectively halt administration of the estate and that Rule

2003(d) is designed to remedy this); *In re Carla Leather, Inc.,* 50 B.R. 764, 770 (S.D.N.Y.1985) (same). If an interested party does not move quickly, then the interim trustee serves as the trustee. The majority is simply incorrect in its contention that Rule 2003(d) invalidates an election in violation of § 702 because pending a final determination by the bankruptcy court, there is no winner in a disputed election. Here, Mordy was not declared the trustee at the § 341(a) hearing. Thus, I can not agree that Rule 2003(d) invalidates an election when there has been no declared winner. Pending a final determination by the bankruptcy court on the disputed election, Mordy merely received votes but was not designated the trustee.

Moreover, the right of an elected candidate to serve as the trustee is not absolute. A candidate must be eligible to serve, *see* § 321, and must also qualify to serve under § 322. Section 322 of the Bankruptcy Code provides, in relevant part, that:

> [a] person selected under section ... 702 ... of this title to serve as trustee in a case under this title qualifies if *before five days* after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties.

11 U.S.C. § 322 (emphasis added). The interim trustee continues to serve until a trustee is elected or designated under § 702 and qualifies to serve under § 322. *In re Young,* 97 B.R. 679, 680 (Bankr.N.D.Ga.1988). The court designates the trustee when it resolves the election dispute. Section 322's requirement that the party designated as the trustee file a bond within 5 days to qualify as the trustee is also meant to ensure prompt administration of the estate. Rule 2003(d) compliments § 322 by emphasizing that time is of the essence in certifying a permanent trustee.

Furthermore, I disagree with the majority's conclusion that even if the requirements

**20.** The use of the term "disputed election" in Rule 2003(d) is unfortunate because it implies a contested election involving multiple candidates. Here, the creditors may have believed that there was no disputed election because there was no

challenger to Mordy. However, a disputed election is more properly understood as any election where a winner is not declared by the UST at the § 341(a) hearing.

of Rule 2003(d) were procedural rather than substantive, the 10–day limitation unreasonably frustrates the substantive rights established by § 702. *See Hill,* 811 F.2d at 487 ("a procedural rule could be so harsh as to arbitrarily frustrate a substantive right"). In support of this conclusion, the majority first contends that the Rule impermissibly shifts the burden to the creditors who voted for a trustee to bring the dispute to the court's attention despite their belief that the election was valid under § 702. However, the 10–day requirement cuts both ways. If an interested party objected to the UST's determination at the § 341(a) hearing that a particular person has been elected the chapter 7 trustee, they must also move within 10 days to bring the objection before the bankruptcy court. The creditors in this case simply erred in presuming that the election was final. Mordy had not been declared the trustee at the April 20, 1997 § 341(a) hearing. This failure to name a trustee at the hearing was enough to alert the creditors that there was a disputed election and that they should promptly seek resolution of the dispute.[21]

The majority's second contention is that Rule 2003(d) provides an unreasonably short period of time in which to file a motion to resolve an election dispute, particularly in light of the fact that the UST is not required to file a report of an election dispute with the court within 10 days. I agree that better procedures would be to either trigger the 10–day period after the UST files and serves its report, *see* Rule 2007.1(b)(3)(B) [22], or provide

more time for filing a motion to resolve the dispute. However, use of the present procedure does not arbitrarily or unreasonably frustrate a substantive right. As discussed, the creditors here clearly had notice of a dispute by the failure of the UST to name a trustee at the § 341(a) hearing. Given this notice, 10 days is not an unreasonable time period within which to require the filing of a motion to resolve an election dispute, especially considering the Supreme Court and Congress's desire to promptly resolve such disputes. *See* Fed.R.Bankr.P. 9006(b)(2) (precluding enlarging time for taking action under Rule 2003(d)).[23] It is within the province of those two bodies to set the appropriate deadline period. It is not the function of this Panel.

Finally, the majority states that it would be unfair to deny Mordy the opportunity to serve as trustee and that the alleged wrongdoings of the debtor and Caudill might go uninvestigated if the interim trustee continued to serve. I think that this is a phantom threat. A chapter 7 trustee has a fiduciary duty to act diligently and in the best interest of the creditors. *In re Accomazzo,* 226 B.R. 426, 429 (D.Ariz.1998); *In re Melenyzer,* 140 B.R. 143, 154–55 (Bankr.W.D.Tex.1992). There has been no suggestion that the interim trustee in this case will not act in the best interest of the parties in interest. We should not presume that the interim trustee will not thoroughly investigate the allegations of wrong-doing. *See* 11 U.S.C. § 704(4) (requiring the trustee to investigate the debtor's financial affairs).

**21.** Here, the UST's attorney indicated at the § 341(a) hearing that the parties had 10 days from the date she filed her report with the court to resolve any disputes. Obviously she was wrong and the creditors' reliance on her statement, if any, is unfortunate. Nevertheless, all parties are presumed to be familiar with the Bankruptcy Rules. Rule 2003(d), like any other procedural rule, can be a trap for the unwary. *See Carla Leather,* 50 B.R. 764.

**22.** With regard to a dispute in the election of a chapter 11 trustee, Rule 2007.1(b)(3)(B) requires that the UST promptly file a report with the court stating that the election is disputed and serve a copy of the report on all parties in interest. An interested party then has 10 days to file a motion to resolve the election dispute or the individual appointed by the UST serves as the

chapter 11 trustee. Rule 2007.1(b)(3)(B), implemented in 1997, was specifically derived from Rule 2003(d). Fed.R.Bankr.P. 2007.1(b)(3)(B) advisory committee note (1997). Had the rules advisory committee, the Supreme Court, or Congress believed that Rule 2003(d) abridged or modified substantive rights, they likely would have changed it in 1997 to comport with Rule 2007.1(b)(3). The fact that Rule 2003(d) was not modified when Rule 2007.1(b) was enacted further supports the conclusion that it does not violate 28 U.S.C. § 2075.

**23.** The majority's holding not only states that the Supreme Court and Congress erroneously abridged substantive rights by enacting Rule 2003(d), but necessarily implies that they compounded this error by reinforcing its validity in Rule 9006(b)(2).

Accordingly, I would REVERSE because the debtor's motion to strike the certification motion should have been granted. The creditors' certification motion was untimely and the time limitation of Rule 2003(d) does not abridge or modify the substantive rights of § 702(c).